IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

LINDA S.,

       Plaintiff,

v.                                                                    CIVIL ACTION NO.   2:24-cv-00050

LELAND DUDEK,
*Acting Commissioner for the Social Security Administration,*

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Linda S.'s ("Claimant") Complaint seeking review of the final decision of the Acting Commissioner of Social Security, Leland Dudek[1] ("Commissioner"). (ECF No. 1.)   By Standing Order, this action was referred to United States Magistrate Judge Omar J. Aboulhosn ("Magistrate Judge") for submission of proposed findings and a recommendation ("PF&R").   (ECF No. 2.)   Magistrate Judge Aboulhosn filed his PF&R on May 10, 2024, (ECF No. 10), recommending that this Court deny the Claimant's motion for judgment on the pleadings, (ECF No. 5), grant the Commissioner's motion for judgment on the pleadings, (ECF No. 8), affirm the final decision of the Commissioner, and dismiss this action from the Court's docket.

Claimant timely filed her objections to the PF&R on June 12, 2024, (ECF No. 11), and the Commissioner timely responded, (ECF No. 12).   For the reasons that follow, the Court

---

[1] While Martin J. O'Malley was the Acting Commissioner of Social Security when Claimant commenced this action, Leland Dudek became the Acting Commissioner on February 17, 2025.   Acting Commissioner Dudek is automatically substituted as the defendant in this action.   Fed. R. Civ. P. 25.

**OVERRULES** Claimant's Objections, (ECF No. 11), **ADOPTS** the PF&R, (ECF No. 10), and **DISMISSES** this action from the Court's docket.

I.    BACKGROUND

A detailed recitation of the extensive facts of this action can be found in the Magistrate Judge's PF&R, (*Id.*), and therefore need not be repeated here.   The Court will provide a discussion of any relevant facts as necessary throughout this opinion to resolve Claimant's objections.

II.    LEGAL STANDARD

*A.  Review of a Magistrate Judge's PF&R*

The Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C).   However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to any portion of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   Further, this Court need not conduct a *de novo* review of any "general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

*B.  Review of the ALJ's Findings and Decision*

The Court's review of a final disability benefits decision is limited to determining whether the Administrative Law Judge's ("ALJ") findings are supported by substantial evidence and whether the correct law was applied.   *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was

2

reached by means of an improper standard or misapplication of the law."). The substantial evidence required to support an ALJ's finding must be more than a scintilla of evidence, but can be less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Court must defer to the Commissioner's decision if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

A claimant bears the burden of proving to the Commissioner that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5). To be "disabled" means a claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To assess a disability claim, the Commissioner must follow a five-step "sequential evaluation" process. *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). The Fourth Circuit has provided the following description of that process:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether [s]he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents [her] from performing [her] past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able

3

to perform other work considering both [her] remaining physical and mental capacities (defined as residual functional capacity) and [her] vocational capabilities (age, education, and past work experience) to adjust to a new job.

*Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).    The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.    *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).    If a disability decision can be made at any step of the process, the inquiry ceases.    *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III.    DISCUSSION

Claimant has noted three objections to the Magistrate Judge's PF&R.    (ECF No. 11.) These objections, however, are little more than a copy and paste of the arguments made to the Magistrate Judge.    As previously stated, the Court is under no obligation to consider general objections under any standard, *de novo* or otherwise.    Courts within this District have found that "[m]erely reiterating the same arguments presented to a magistrate judge does not constitute a specific objection warranting de novo review."    *Kerr v. McKay*, 2022 WL 985869, at *2 (S.D. W. Va. Mar. 31, 2022) (Copenhaver, J.) (collecting cases).    By failing to draw the Court's attention to "any specific issues for review," the Magistrate Judge's role becomes functionally "useless" as it requires "the district court to perform identical tasks" already completed by the Magistrate Judge. *Id.* (citations omitted).    As Judge Copenhaver has observed, the "case law is replete with district court decisions declining de novo review for PF&R objections when the objector simply repackaged evidence and arguments already presented to the magistrate judge."    (*Id.*)    (collecting cases).

In her objections, Claimant has repackaged the same arguments made to the Magistrate

Judge within each of her objections.[2]   These objections do very little to point to exactly how the Magistrate Judge erred.   As such, the Court is entitled to overrule them without considering more. Further, even if the Court reviews the general objections *de novo*, the Court would still find they should be overruled.

### A.  First Objection—Mental Impairments at Step Two

The first objection relates to step two of the sequential evaluation process ("Step Two"). Here, Claimant contends that the ALJ erred by failing to find her mental impairments were "severe."  (ECF No. 11 at 1.)   In making that assertion, Claimant notes that the ALJ found a report by state agency experts—which included a notation that Claimant's impairments were "severe"—to be "persuasive."  (ECF No. 5 at 3 (citing Tr. 18–19).)   Nevertheless, Claimant believes that the ALJ "inexplicably" concluded that the impairments were not severe for purposes of Step Two.   (*Id.* (citing Tr. 13).)   The Magistrate Judge concluded that the ALJ's determination of non-severity was supported by substantial evidence.  (ECF No. 10 at 20.)   Claimant now objects on the theory that the Magistrate Judge "rationalizes this conflict [in the reports] for reasons not discussed or explained by the ALJ."   (ECF No. 11 at 1–2.)

At Step Two, the ALJ must determine whether a non-employed claimant has a "severe impairment."   *Hall*, 658 F.2d at 264.   To qualify as a "severe impairment," a claimant's impairment must "significantly limit [their] physical or mental ability to do basic work activities."

---

[2] (*Compare* ECF No. 5 at 14 ("The significance of the ALJ's rejection of Ms. Scott's bilateral carpal tunnel syndrome as a severe impairment is the fact that the VE specifically testified that, if Ms. Scott was limited to occasional use of her hands to handle and finger, she could not perform her past work as a sales clerk, or any other work available in the national economy, based on her vocational profile (Tr. 84)."), *with* ECF No. 11 at 4 ("The significance of the ALJ's rejection of Ms. Scott's bilateral carpal tunnel syndrome as a severe impairment is the fact that the vocational expert (VE) specifically testified that, if Ms. Scott was limited to occasional use of her hands to handle and finger, she could not perform her past work as a sales clerk, or any other work available in the national economy, based on her vocational profile (Tr. 84).").)

20 C.F.R. § 404.1522(a). These "basic work activities" include "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). To make that assessment with mental impairments, the ALJ considers four broad functional areas that measure a claimant's abilities to: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). In rating a claimant's abilities, the ALJ uses a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the degree of the limitation is rated as none or mild, the ALJ will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [their] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

The ALJ engaged in the above process and concluded that Claimant's mental impairments were not severe. (Tr. 13.) The Court finds this decision is supported by substantial evidence. Claimant is correct that some records state that her mental impairments were "severe." (Tr. at 95, 110.) However, these reports fail to qualify what work-related functions were "severely" impacted. As explained above, severity is determined in a Social Security adjudication by assessing the impairment's impact on the broad functional areas. The ALJ considered the report's conclusions related specifically to those four areas. The ALJ concluded that Claimant "was mildly limited" in three of the four functional areas, "except for having no limitation in the ability to adapt or manage oneself." (Tr. at 18–19.) The ALJ referenced the state reports—cited internally as Exhibits B-1A and B-4A—to reach her conclusion. (*See* Tr. 19 (citing *sub nom.* Tr. at 86–103, 106–14).) Just as the ALJ stated, the reports include the notations of "mild" and "none" for the relevant functional areas. (Tr. at 95 ("Understand, remember, or apply

information: Mild. Interact with others: Mild. Concentrate, persist, or maintain pace: Mild. Adapt or manage oneself: None.").)   Put simply, the impairments were not rated in a manner that would make them "severe" as it relates specifically to the relevant work-related criteria at Step Two.   An ALJ does not err in determining non-severity if the impairment is "a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work."   *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984).   Indeed, that is the very conclusion reached in the report referenced by Claimant.   (*See* Tr. at 96 ("based on the mer [*sic*] in the file, clmt [*sic*] can process and recall work-like procedures and interact with public.").) Given that the decision is supported by internally cited record evidence, the Court finds that the ALJ's decision is supported by substantial evidence.

The Magistrate Judge's analysis mirrors that of this Court's.   (ECF No. 14–20.)   Still, Claimant believes the Magistrate Judge erred because he "rationalizes" the conclusion of the ALJ "for reasons not discussed or explained by the ALJ."   (ECF No. 11 at 1–2.)   In this first objection, Claimant alleges that the Magistrate Judge engaged in impermissible *post hoc* rationalization. (*Id.*)

A reviewing court cannot confirm an agency decision based on *post hoc* rationalizations. *See Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting an argument supporting an ALJ's decision in part because the Commissioner attempted to use "a *post hoc* rationalization" to support the determination) (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)).   *Post hoc* rationalizations are justifications that are not within the ALJ's written determination but are offered as external justifications to support the ALJ's ultimate decision.   *Cf. id.* (rejecting as a "*post hoc* rationalization" an attempt to justify an ALJ's decision based on

7

*Chevron* deference); *Arakas v. Commissioner of Social Security Administration*, 983 F.3d 83, 109 (4th Cir. 2020) (rejecting as "meritless post-hoc justification" an attempt to justify an ALJ's decision based on evidence "never even mentioned" within the decision). However, the ALJ's explanations within the decision need not be exhaustive. *Reid v. Commission of Social Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Rather, the ALJ must simply reference enough evidence to "build an accurate and logical bridge from the evidence" to the ultimate conclusion reached. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

Claimant's assertion that the Magistrate Judge engaged in *post hoc* rationalization is without merit. The Magistrate Judge did not go beyond the ALJ's decision in order to make his findings and recommendations. Just as this Court has, the Magistrate Judge analyzed the written decision of the ALJ, the cited evidence relied on, and the ultimate conclusions reached. (*See* ECF No. 10 at 14–20 (citing the transcript generally).) Having reviewed all of the materials, the Magistrate Judge was satisfied that the bridge between the reports Claimant cites and the conclusion of non-severity was supported by substantial evidence.[3] (*Id.* at 17.) Explaining the "logical bridge" is not *post hoc* rationalization. It is simply an explanation to the Court and the parties of how the ALJ's decision satisfies the standard of review. Thus, while "[p]ost hoc rationalizations are precluded[,] *post hoc* explanations are not." *National Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D.D.C. 1996) (citations omitted). Since the Magistrate Judge was simply explaining how he reached his recommendation—and the Court ultimately agrees with it—Claimant's first objection is **OVERRULED**.

---

[3] In fact, the Magistrate Judge seems to have rebuffed an attempt to justify the ALJ's decision based on *post hoc* rationalization. (*See* ECF No. 16–17 n.5 (rejecting an attempt by the Commissioner to justify the ALJ's decision by discounting the "severe" notation as a "scriveners' error").)

B. *Second Objection—Mild Mental Impairments and the RFC*

Claimant's next objection similarly addresses the ALJ's decision regarding her mental impairments.  This objection relates to the ALJ's determination at step four of the sequential evaluation process ("Step Four").   During this stage, the ALJ must consider whether the identified impairments affect a Claimant's ability to perform past relevant work.   *Hall*, 658 F.2d at 265. Claimant believes the ALJ erred because "she omitted [Claimant's] proven mental functional limitations from the RFC finding" even though her mental impairments were determined to be not severe.  (ECF No. 11 at 4.)   Claimant argues that the Magistrate Judge's review relied only on a "perfunctory conclusion" in the ALJ's decision to say that the decision was supported by substantial evidence.   (*Id.*)

At Step Four, the ALJ compiles a Residual Functional Capacity ("RFC") assessment that analyzes a claimant's ability to perform relevant work-related tasks despite any impairments.   20 C.F.R. § 404.1545(a)(1).   The RFC functions as an assessment of "the most [a claimant] can still do despite [their] limitations."   *Id.*   In determining a claimant's RFC, the ALJ takes into account the individual's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. 404.1545(a)(4).   At this stage, the ALJ must consider the combined effects of the limitations imposed by each of a claimant's impairments, whether they were severe or not. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

Here, the ALJ appropriately weighed Claimant's concerns about her mental impairments. Claimant's RFC formulated by the ALJ included the following: "[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb

ladders, ropes, or scaffolds." (Tr. at 15.) Further, the ALJ assessed Claimant's RFC to include that she should "avoid more than occasional exposure to temperature extremes, vibration, fumes, odors, dust, gases, and poor ventilation; can work in moderate noise levels; and can never work at unprotected heights or around dangerous moving machinery." (*Id.*) In making that assessment, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence." (*Id.*) That included assessments of Claimant's mental impairments. The ALJ noted "[C]laimant's statements about the intensity, persistence, and limiting effects of her symptoms" were "not entirely consistent with the record." (*Id.* at 18.) Relating to her mental impairments, the ALJ stated that "[C]laimant has many times presented to her physicians and denied all symptoms." (*Id.*) This included evidence showing she told health care providers that "she was happy and grateful within the month of beginning treatment" and that she "denied depression and anxiety many times." (*Id.* (citing *sub nom.* Tr. at 491–512, 657–84, 775–899, 1054–61, 1133–1234).) Thus, Claimant's argument that the "ALJ [did] nothing to demonstrate she actually considered [Claimant's] found mental limitations," (*See* ECF No. 11 at 2), is unsupported by the ALJ's decision.

Claimant makes much of the fact that the ALJ "did not explain why all the mental functional limitations had been omitted despite the prior psychiatric review technique (PRT) findings." (*Id.*) The decision indicates, however, that the ALJ considered the mental impairments identified in the PRT. The report containing the PRT is the very report—Exhibit B-1A—that Claimant alleges supported a finding of "severe" mental impairments. (*See* Tr. at 95.) To reiterate, the report found that the limitations in the relevant work-related areas were either "mild" or not present. (*See* Tr. at 95 (referencing the "psychiatric review technique").)

10

Specifically, the PRT refers to three groupings of mental impairments: 1) depressive, bipolar, and related disorders; 2) anxiety and obsessive-compulsive disorders; and 3) trauma and stressor-related disorders. (*Id.*) The very paragraph citing Exhibit B-1A states that Claimant "received mental health treatment at [omitted] for *bipolar II disorder* and depressed and *generalized anxiety disorder* and was treated at [omitted] for *major depressive disorder severe* with *anxious distress* and *PTSD*." (Tr. at 18 (emphasis added).) The ALJ discounted testimony by Claimant that her mild mental impairments limited her work-related abilities because subsequent "mental status examinations showed intact concentration and normal memory with mostly a good mood and intact judgment and insight." (*Id.*) Considering that assessment, along with six other reports, the ALJ noted that "recent medical evidence shows" that Claimant told her providers that her mental health symptoms had improved. (*Id.*) Simply put, the ALJ weighed the report containing the PRT and found that her mental health impairments did not lead to work-related limitations.

As for the PRT limitations not appearing in the final RFC, it appears that the answer is quite simple: the ALJ did not need to include them. Courts of this District have consistently found that "mental limitations identified using the [PRT] do not necessarily indicate work-related functional limitations that must be present in the RFC assessment." *Vanessa L. v. O'Malley*, 2024 WL 4133960, at *8 (S.D. W. Va. Jan. 30, 2024) (PF&R adopted and objections overruled in *Vanessa L. v. O'Malley*, 2024 WL 3717517 (S.D. W. Va. Aug 8, 2024)); *see also Wall v. Saul*, 2021 WL 5225792, at *8 (S.D. W. Va. June 2, 2021) (PF&R adopted in *Wall v. Saul*, 2021 WL 5230989 (S.D. W. Va. Nov. 9, 2021)); *Hedrick v. Saul*, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (PF&R adopted in *Hedrick v. Saul*, 2021 WL 5230987 (S.D. W. Va. Nov. 9 2021)); *Tammy R. v. Kijakazi*, 2023 WL 6122140, at *6 (S.D. W. Va. Aug. 31, 2023) (PF&R adopted in

*Tammy R. v. Kijakazi*, 2023 WL 6130565 (S.D. W. Va. Sept. 19, 2023)).   Thus, the ALJ did all

she was required to do.   She considered the PRT findings when creating the RFC assessment and

explained why they did not affect Claimant's work-related abilities.   Nothing required the ALJ to

include the PRT limitations within the RFC on a *per se* basis.   Seeing as the Court can rely on the

ALJ's decision to trace from the evidence to the ultimate conclusion, the Court finds the requisite

logical bridge in the ALJ's analysis exists.   *Monroe*, 826 F.3d at 189.

Further, the Magistrate Judge made an appropriate review of the ALJ's decision.

Nevertheless, Claimant states that the "Magistrate Judge concludes that" the ALJ appropriately

considered her mild mental impairments based on a single sentence in the decision.   (*See* ECF

No. 11 at 2 ("The Magistrate Judge concludes that, because the ALJ determined that "[b]ased on

the foregoing, the undersigned finds the claimant has the above residual functional capacity

assessment, which is supported by the record," this somehow demonstrates that the ALJ considered

Plaintiff's found mental limitations." (citation omitted)).)   That simply mischaracterizes the

review conducted by the Magistrate Judge.   He did not simply rely on a single, "perfunctory

conclusion" made by the ALJ.   (*See id.*)   Rather, his review was thorough and extensive.   Citing

*Reid*, the Magistrate Judge indicated that our circuit precedent does not require "the ALJ

specifically refer to every piece of evidence in [her] decision."   (ECF No. 10 at 18 (citing *Reid*,

769 F.3d at 865).)   Of course, a decision needs to be support by *some* evidence.   Accordingly,

the Magistrate Judge noted the evidence that did support the RFC assessment.   The Magistrate

Judge referenced the ALJ's decision which "considered the [Claimant's] testimony concerning her

nervousness and anxiety."   (*Id.* at 18 (citing Tr. at 16).)   He also referenced the portion of the

decision which "considered the [Claimant's] statements to her treatment providers where she

denied having symptoms related to depression and anxiety 'many times.'" (*Id.* (citing Tr. at 18).) The PF&R further states that "the ALJ considered the opinion evidence concerning the [Claimant's] mental impairments." (*Id.* (citing Tr. at 18–19).) Lastly, the Magistrate Judge considered—and rejected—the argument that the ALJ failed to adequately address the PRT mental limitations. (*Id.*) It was from the fact that the ALJ was "following her review of the medical and other evidence before her" that the Magistrate Judge concluded the decision was supported by substantial evidence. (*Id.* at 20.)

Given the state of the decision, it is apparent that the ALJ weighed competing evidence between Claimant's statements and other evidence, but ultimately credited the other evidence. The Court cannot reweigh the evidence since credibility determinations rest with the ALJ, not the reviewing court. *Craig*, 76 F.3d at 589 ("In reviewing for substantial evidence [supporting the ALJ's decision], we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].").  Because the ALJ's decision is supported by substantial evidence, the Court **OVERRULES** Claimant's second objection.

### C. *Third Objection—Carpal Tunnel Syndrome at Step Two*

Similar to her first objection, Claimant's final objection relates to another decision the ALJ made at Step Two. (ECF No. 11 at 4–5.) This time, Claimant argues that the ALJ erred by not finding her bilateral carpal tunnel syndrome to be a severe impairment. (*Id.* at 4.) Her issue with the ALJ's decision is the failure to explain the portion of a medical report that indicated that her bilateral carpal tunnel was "[w]orsening since last visit." (*Id.*) Consequently, Claimant alleges error on the part of the Magistrate Judge for recommending an affirmance based on a *post hoc* rationalization. (*Id.*)

13

Once again, the Court finds that the ALJ's determination is supported by substantial evidence. Contrary to Claimant's position, the ALJ's decision reflects that she did, in fact, consider the report in her decision. The ALJ noted that Claimant "has been diagnosed with bilateral carpal tunnel syndrome and given wrist braces, with EMG/NCV studies showing mild to moderate median neuropathy at the wrist." (Tr. at 13.) That finding is consistent with the very Progress Notes that included the "[w]orsening since last visit" notation. (*See* Tr. at 1116–32 (also referred to as "Exhibit B-31F").) Indeed, the ALJ made specific mention of this record during her Step Two analysis. (*See* Tr. at 13 (citing Exhibit B-31F).) Thus, the ALJ considered this report along with four other exhibits in the record. (*Id.*) She then determined that the totality of the evidence "does not indicate limitation in function in the hands or wrists" and that Claimant's bilateral carpal tunnel was "not a severe impairment." (*Id.*) At bottom, the ALJ weighed the competing reports, made a determination, and provided enough for the reviewing court to determine that finding was appropriately supported. In other words, the logical bridge exists.[4]

The reasons the Court rejects Claimant's objection regarding the Magistrate Judge's conduct is similar to the analysis in Part III.A. Again, the Magistrate Judge simply made observations within the ALJ's decision and the records referenced by it. The Magistrate Judge observed that "the ALJ also noted that treatment records showed that upon examination, the Plaintiff demonstrated normal motor strength and sensation in the hands and normal range of

---

[4] While Claimant does not specifically allege error beyond Step Two, the ALJ's analysis of her carpal tunnel did not end at there. The ALJ continued to analyze Claimant's carpal tunnel at Step Four. (Tr. at 18.) Again, the ALJ found that Claimant's statements regarding "intensity, persistence, and limiting effects of her symptoms" were not consistent with other evidence. (*Id.*) In conjunction with her other impairments, the ALJ concluded that the evidence indicated that she exhibited "only mild median neuropathy and no examination has shown abnormality in the upper extremities." (*Id.*) Like her mental impairments, the ALJ appropriately continued to consider her carpal tunnel impairment at Step Four.

14

motion in the wrists and hands; there were also no findings of atrophy or abnormal movements." (ECF No. 10 at 21 (citing Tr. at 13, 735–60, 765–74, 1041–49, 1116–32, 1266–1273).) Those records are specifically referenced by the ALJ's internal exhibit numbers which track with the transcript pages. (*Compare* Tr. at 5, *with* Tr. at 13 ("Exhibits B-17F, B-19F, B-24F, B-31F, and B-35F").) Thus, the Magistrate Judge "appreciate[d]" Claimant's assertion "that she reported a '[w]orsening since last visit,'" but ultimately—and correctly—noted that the evidence "indicated normal clinical observations." (ECF No. 10 at 21 (citing ECF No. 5 at 14).) Thus, when the Magistrate Judge concluded that "the ALJ thoroughly reviewed" the evidence regarding Claimant's carpal tunnel and "reasonably found that it did not support" a finding of a limitation, he made that conclusion properly. (*Id.* at 21–22.) As such, the Magistrate Judge properly identified substantial evidence based on the ALJ's decision—not *post hoc* rationalizations. Accordingly, the Court **OVERRULES** Claimant's third objection.

## IV.    CONCLUSION

For the reasons discussed above, the Court **OVERRULES** Claimant's objections, (ECF No. 11), **ADOPTS** the PF&R, (ECF No. 10), **DENIES** Claimant's motion for judgment on the pleadings, (ECF No. 5), **GRANTS** the Commissioner's motion for judgment on the pleadings, (ECF No. 8), and **DISMISSES** this action from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 28, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

16